Under Pen. Code, art. 592, providing that the use of a dangerous weapon in an angry, threatening manner, with intent to alarm another, is an assault, where defendant called another into his cold drink stand and trouble ensued, during which defendant drew his pistol and presented it at the other, it sustains a conviction of assault.

[Ed. Note.—For other cases, see Assault and Battery, Cent. Dig. §§ 73, 74; Dec. Dig. § 53.*]

Appeal from Mitchell County Court; A. J. Coe, Judge.

Bill King was convicted of assault, and he appeals. Affirmed.

C. E. Lane, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. The only proposition submitted for reversal is the alleged insufficiency of the evidence. We are of opinion this is not well taken. The conviction was for assault. The record discloses that appellant called Hall into his cold drink stand, where trouble ensued between them, in which appellant drew his pistol on him and presented it. Hall backed out and left. This is the state's case. This occurred on the 27th day of December. Appellant claimed that he had the pistol on the 24th of December in order to frighten some boys away who had been throwing firecrackers at his cats, and he also states that the occasion he testifies about was the only one on which he had the pistol. The state in rebuttal introduced witnesses to show that the trouble he had with the boys about the cats occurred on the 24th, and not the 27th, of December.

We are of opinion this evidence is sufficient, under article 592 of the Penal Code, where this language is found: "But the use of any dangerous weapon or the semblance thereof in an angry threatening manner with intent to alarm another and under circumstances calculated to effect that object comes within the meaning of an assault."

Being of the opinion that the evidence is sufficient to justify the conviction, this judgment ought to be affirmed; and it is so ordered.

---

Ex parte STEIN.

(Court of Criminal Appeals of Texas. Feb. 22, 1911.)

1. ANIMALS (§ 50*)—STOCK LAW—LOCAL OPTION ELECTION—POLLING PLACE.

Where a petition and order for election to adopt the stock law within a justice precinct excepted that portion of the precinct within an incorporated town, and electors living within that portion were not permitted to vote at the election, the fact that one of the polling places selected was the courthouse located within the excepted portion, was not such an irregularity as would invalidate the election.

[Ed. Note.—For other cases, see Animals, Cent. Dig. § 150; Dec. Dig. § 50.*]

2. ANIMALS (§ 50*)—STOCK LAW—ELECTION—DECLARATION OF RESULT.

Where a petition and order for an election to determine whether the stock law should be put in force within a justice precinct excepted that portion included within an incorporated town, and the majority of the voters outside the town voted in the affirmative, the fact that an order subsequently entered putting the law in force declared that it was in force in the entire precinct did not render it invalid, in so far as it applied to the precinct outside the town.

[Ed. Note.—For other cases, see Animals, Cent. Dig. § 151; Dec. Dig. § 50.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**3. HABEAS CORPUS (§ 29*)—PURPOSE OF WRIT —SUFFICIENCY OF COMPLAINT.**

Habeas corpus, though unavailable to test the sufficiency of the complaint, is available to secure the discharge of accused, where the complaint or indictment is void and insufficient to confer jurisdiction, as where it is based on a special law not in force in the territory alleged.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 24; Dec. Dig. § 29.*]

**4. ANIMALS (§ 57*) — RUNNING AT LARGE — COMPLAINT—SUFFICIENCY.**

Where a complaint charged accused with violating the stock law prohibiting stock from running at large in justice precinct No. 6, in Fayette county, Tex., alleging that the law had been adopted and was in force in such precinct, when, in fact, it was not in force there, except within the territory outside an incorporated town, the complaint was fatally defective.

[Ed. Note.—For other cases, see Animals, Dec. Dig. § 57.*]

Habeas corpus by William Stein to obtain his discharge from conviction for violating the stock law alleged to be in force in justice precinct No. 6, in Fayette county, Tex. Relator discharged.

Brown & Lane, for appellant. Sam C. Lowrey, County Atty., and C. E. Lane, Asst. Atty. Gen., for the State.

HARPER, J. The relator was charged with permitting his stock to run at large in justice precinct No. 6, Fayette county, the allegation in the complaint being that the law prohibiting stock from running at large was in force in justice precinct No. 6, Fayette county, Tex. Relator was tried in the justice court and convicted. He appealed to the county court, and was again tried and convicted. The fine was in such an amount that no appeal could be taken to this court, and he sued out a writ of habeas corpus, which was heard by this court at a former day of this term. Relator filed a motion in the county court to quash the indictment on various grounds, which was by the court overruled, and in the application for a writ of habeas corpus he presents, in substance, the same grounds.

The agreed statement of facts shows that at the February term, 1910, of the commissioners' court of Fayette county, a petition was presented praying that an election be held to determine whether or not certain stock should be prohibited from running at large in justice precinct No. 6, except certain territory within the said justice precinct, being the incorporated town of Flatonia. The petition describes the justice precinct by metes and bounds, and also describes by metes and bounds the territory within said justice precinct not included in the petition for an election. On February 10, 1910, the court entered an order that said election be held as prayed for on the 2d day of April, 1910, in said order saying: "The subdivision herein described being justice precinct No. 6, Fayette county, Texas, excluding, however, from the above-described territory of justice precinct No. 6, the town of Flatonia, an incorporated town within said justice precinct," then giving the field notes of the territory within justice precinct No. 6 not included in the order for an election. The county judge on February 18th issued his proclamation for said election to be held in accordance with the recitations in the petition and the order, and ordered that polls be opened in Cistern schoolhouse, in Colony schoolhouse, in Praha schoolhouse, and in the courthouse in the town of Flatonia, naming the managers. The returns show the election was held on the day named, and the stock law carried by 41 majority, no one living in the incorporated town of Flatonia (within said precinct) being permitted to vote. On the 18th day of April, 1910, the county judge issued a proclamation declaring that a majority of the votes were cast in favor of the stock law, and in said declaration declared the law in force in all of justice precinct No. 6, in said order not exempting from the operation of the law the incorporated town of Flatonia, as was done in the petition for the election, the action of the commissioners' court in ordering the election, and the proclamation of the county judge ordering the election to be held, naming the voting places and managers of election. Thereafter defendant had a complaint filed against him, in which it was charged that he permitted his stock to run at large in justice precinct No. 6, not excluding therefrom the incorporated town of Flatonia, the citizens of which town were not permitted to vote in the election. The facts show that relator permitted his stock to run at large in the territory in which the election was held.

We do not deem it necessary to notice but three questions raised in the application and relator's brief, as all necessary steps seem to have been taken to put in force the law in the territory in which the petition sought an election.

The relator complains that the county judge had no authority to name the courthouse in Flatonia as one of the places for the citizens to vote, as it was in the territory in which the voters were excluded from participating in the election; that the order declaring the stock law carried and in force declared it in force in all of justice precinct No. 6, when, in fact, the petition and order for the election embraced only a portion of said justice precinct No. 6, and is therefore void; that the indictment alleged that relator had permitted his stock to run at large in justice precinct No. 6, when there was no law in force in said justice precinct No. 6, but only in the portion thereof described in the petition, and the order ordering the election to be held is void. In the agreement it is stated that the courthouse in Flatonia is in the territory excluded, and not

in the territory in which the election was petitioned for and held, and it is also agreed that no one living in the excluded territory voted in said election. Where the polling place selected by the proper officers is outside of the election district, the electors who live in the territory to be affected who vote thereat are not disfranchised on that account, if the election is lawfully conducted. 15 Cyc. p. 344, and authorities there cited. In Ex parte Segars, 32 Tex. Cr. R. 553, 25 S. W. 26, this court holds that a mere irregularity in the place where the election is held will not invalidate the election, when it does not appear that there has not been a fair expression of the will of the people. We hold that the place of voting in this case would not invalidate the election. The judge in declaring the result of the election declared it in force in all of justice precinct No. 6, when, in fact, the election was held only in that part of said precinct exclusive of the incorporated town of Flatonia. We do not think that the proclamation declaring the law in force in all of the justice precinct would be such an irregularity as would prevent it going in effect in such part of the precinct as had legally adopted the law. In Ewing v. Duncan, 81 Tex. 235, 16 S. W. 1002, it is held: "Another ground upon which it is alleged that the election was illegal is that the county judge did not canvass the returns and declare the result. * * * The presumption may be that he did not do his duty in the premises, and the result was never legally declared. * * * But, when the election is drawn in question in a judicial inquiry, the legal votes cast will determine the result. Therefore, if Floyd city received a majority of the votes, the fact that the county judge failed to do his duty is no ground for vacating the election." This holding is adopted and cited with approval by Judge Hurt in the case of Chapman v. State, 37 Tex. Cr. R. 167, 39 S. W. 113, also citing other authorities.

But the next question is one that presents a graver question. The stock law was not adopted in justice precinct No. 6 as a whole. Certain territory was excluded, and the stock law is not shown to have ever been in force in all of said justice precinct. In fact, justice precinct No. 6 has no such law. Only in such parts of it as are outside of the incorporated town of Flatonia is the law in force. We are aware of that line of decisions that the writ of habeas corpus is not available to test the sufficiency of a complaint. Cox v. State, 53 Tex. Cr. R. 242, 109 S. W. 369, and cases there cited. And this has been the holding in this court in an unbroken line of decisions where the complaint is only insufficient, and is based on a valid law. But, as we understand it, the rule is different where the complaint or indictment is void, and especially would this be true when it is based on a special law not in force in the territory alleged. In the complaint in this case, it is alleged that the stock law was in force in all of justice precinct No. 6, and that the stock were permitted to run at large in said precinct in violation of said stock law. A motion was made to quash the complaint on the ground that the stock law was not in force in justice precinct No. 6. Under the agreed statement of facts, we find that justice precinct No. 6 as a whole had no such law, and we are of the opinion that the complaint is void, because there was no law in force in all of justice precinct No. 6 on which to base the complaint. In Ex parte Siebold, 100 U. S. 371, 25 L. Ed. 717, the Supreme Court of the United States says: "It is stated, however, in Bacon's Abridgment, probably in the words of Chief Baron Gilbert, that, 'if the commitment be against law, as being made by one who had no jurisdiction of the cause, or for a matter for which by law no man ought to be punished, the court are to discharge.' Bac. Abr. Hab. Corp. B, 10. The latter part of this rule, when applied to imprisonment under conviction and sentence, is confined to cases of clear and manifest want of criminality in the matter charged, such as in effect to render the proceedings void. The authority usually cited under this head is Bushel's Case, decided in 1670. There, 12 jurymen had been convicted in the oyer and terminer for rendering a verdict (against the charge of the court) acquitting William Penn and others, who were charged with meeting in conventicle. Being imprisoned for refusing to pay their fines, they applied to the court of common pleas for a habeas corpus; and, though the court having no jurisdiction in crimina. matters hesitated to grant the writ, yet, having granted it, they discharged the prisoners, on the ground that their conviction was void, inasmuch as jurymen cannot be indicted for rendering any verdict they choose. The opinion of Chief Justice Vaughan in the case has rarely been excelled for judicial eloquence. Bushel's Case, T. Jones, 13; s. c., Vaughan, 135; s. c., 6 Howell, St. Tr. 999. Without attempting to decide how far this case may be regarded as law for the guidance of this court, we are clearly of opinion that the question raised in the cases before us is proper for consideration on habeas corpus. The validity of the judgment is assailed on the ground that the acts of Congress under which the indictments were found are unconstitutional. If this position is well taken, it affects the foundation of the whole proceedings. An unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment. It is true, if no writ of error lies, the judgment may be final, in the sense that there may be no means of reversing it. But personal liberty is of so great moment in the eye of the law that the judgment of an inferior court affecting it is not deemed so conclusive but

that, as we have seen, the question of the court's authority to try and imprison the party may be reviewed on habeas corpus by a superior court or judge having authority to award the writ. We are satisfied that the present is one of the cases in which this court is authorized to take such jurisdiction. We think so, because, if the laws are unconstitutional and void, the circuit court acquired no jurisdiction of the causes. Its authority to indict and try the petitioners arose solely upon these laws."

This holding is in line with the authorities of this state. Ex parte Kramer, 19 Tex. App. 123; Furrh v. State, 6 Tex. Civ. App. 221, 24 S. W. 1127; James v. State, 21 Tex. App. 353, 17 S. W. 422; Mato v. State, 19 Tex. App. 112.

Because the agreed statement of facts shows that the stock law was never adopted or in force in all of justice precinct No. 6, and the complaint alleges a violation of law which it alleges is in force in justice precinct No. 6, but in fact there was no such law, we hold that the complaint and judgment are void, and relator is ordered discharged.